IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| VONITTA S.,[1] | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 7:20-cv-00743 |
| | ) |
| KILOLO KIJAKAZI,[2] | ) |
| | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## REPORT & RECOMMENDATION

Plaintiff Vonitta S. ("Vonitta") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for a period of disability and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Vonitta alleges that the Administrative Law Judge ("ALJ") erred by failing to properly: (1) determine her residual functional capacity ("RFC") including consideration of her obesity; (2) assess her mental impairments; and (3) assess her allegations regarding her symptoms.

I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 19) and **DENYING** Vonitta's Motion for Summary Judgment (Dkt. 17).

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew Saul as the defendant in this case.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Vonitta failed to demonstrate that she was disabled under the Act.[3] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This standard of review requires the Court to "look[] to an existing administrative record and ask[] whether it contains 'sufficien[t] evidence' to support the [ALJ's] factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). "The threshold for such evidentiary sufficiency is not high," Biestek, 139 S. Ct. at 1154, and the final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Vonitta filed for DIB on May 16, 2018, claiming her disability began on May 25, 2018, due to abnormal liver function, chronic inflammation of the pancreas, chronic constipation, major depression, anxiety, bipolar disorder, coronary heart disease, hypertension, herniated lumber invertebral disc, and chronic anemia with abnormal bleeding.[4] R. 101, 306. Vonitta remains insured through December 31, 2023; thus, she must show that her disability began

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[4] Vonitta amended her alleged onset date to May 25, 2018 during the ALJ hearing. R. 101.

before this date and existed for twelve continuous months to receive DIB. R. 101, 103; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied Vonitta's applications at the initial and reconsideration levels of review. R. 168–84. On December 5, 2019, ALJ David Lewandowski held a hearing to consider Vonitta's claims for DIB. R. 124–147 Counsel represented Vonitta at the hearing, which included testimony from vocational expert Asheley Wells. Id. On February 12, 2020, the ALJ entered his decision analyzing Vonitta's claims under the familiar five-step process[5] and denying her claim for benefits. R. 115.

The ALJ found that Vonitta was insured at the time of the alleged disability onset and that she did not engage in substantial gainful activity since May 25, 2018, the amended alleged onset date. R. 103.[6] The ALJ found that Vonitta suffered from the severe impairments of lumbar spondylosis status post microdiscectomy, congestive heart failure, obesity status post gastric bypass, peripheral artery disease, anemia, cervical degenerative changes, bilateral bunions status post right repair, major depressive disorder, anxiety, and bipolar disorder. Id. The ALJ determined that these impairments, either individually or in combination did not meet or medically equal a listed impairment. R. 104–107. The ALJ also considered obesity under Soc. Sec. Ruling 19–2 Titles II and Xvi: Evaluating Cases Involving Obesity, SSR 19–2p, 2019 WL

---

[5] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[6] Vonitta was 42 years on the amended alleged disability onset date and 43 years old on the date of the ALJ opinion, which is considered a younger individual under the Act. R. 113.

2374244 (S.S.A. May 20, 2019). R. 104. The ALJ found that regarding her mental impairments, Vonitta had moderate limitations in interacting with others and concentrating, persisting, or maintaining pace, and mild limitations in understanding, remembering, or applying information and adapting or managing oneself. R. 105–106.

The ALJ concluded that Vonitta retained the RFC to perform sedentary work with certain limitations. R. 107. Specifically, Vonitta can occasionally perform postural activities, but cannot climb ladders, ropes, or scaffolds. She should avoid concentrated exposure to temperature extremes, humidity, vibrations, and industrial hazards. Vonitta can understand, remember, and carry out simple instructions and perform simple tasks. She can have occasional interaction with coworkers and supervisors, but no interaction with the public. Vonitta requires regular breaks every two hours. She is expected to be off task up to ten percent of the workday. The ALJ determined that Vonitta cannot perform her past relevant work as a psychiatric aid and skilled training program coordinator, but she could perform jobs that exist in significant numbers in the national economy, such as a weight tester, assembler, and lens inserter. R. 113–114. Thus, the ALJ determined that Vonitta was not disabled. R. 115. Vonitta appealed the ALJ's decision, and the Appeals Council denied her request for review on October 16, 2020. R. 1–7.

## ANALYSIS

Vonitta alleges that the ALJ failed to properly (1) determine her residual functional capacity ("RFC") including the consideration of her severe physical impairment of obesity; (2) assess her mental impairments; and (3) assess her subjective allegations regarding her symptoms.

A. **Medical History Overview**

1. Medical Treatment

Vonitta was hospitalized four times between December 2016 and March 2017 for complaints of depression, anxiety, and suicidal ideation, but her mood steadily improved after the last hospitalization. R. 59, 581. On May 2, 2018, Vonitta complained of diminished interest and pleasure and reported to Mukesh Patel, M.D. that she was doing better with her medication adjustments. R. 515. During a follow-up visit on May 23, 2018, two days before her amended alleged onset date, Vonitta reported she was sad and struggling with resigning from work, yet her overall mood has been "ok." R. 512. Dr. Patel found that Vonitta had an anxious mood and partial insight and judgment, with no other deficits. R. 513.

In 2018, Vonitta was evaluated by her pain specialist, Shaheen Lakhan, M.D. for back, neck, and shoulder pain. R. 594, 611. In August 2018, Dr. Lakhan found mild tenderness to palpation over the paraspinal musculature, but no evidence of any neurological deficits. R. 596. During visits, Dr. Lakhan noted that, despite Vonitta's stressors, and occasional anxious or depressed mood and affect, she was alert and oriented, her thought processes was intact, and her thought content was appropriate. R. 596, 613.

On May 8, 2019, Vonitta reported that her medications stabilized her depression, and Robert S. McNamara, LCP found her mental examination unrevealing, affirming her efforts to manage her concerns. R. 1576. Vonitta reported on April 15, 2019 that her pain and depression were improving, and she was walking some without her cane. R. 1578. In August 2019, Vonitta complained of increased depression related to her foot and problems with mobility, stating she could not leave her home due to transportation issues; however, she resumed reporting improvement when she could drive again. R. 1568–1569. At her November 2019 follow-up visit, Mr. McNamara noted that Vonitta appeared mildly depressed, yet she was alert, cooperative, had

5

intact thought process, appropriate thought content, and adequate participation in the session. R. 1644. Vonitta noted that she would feel better if she improved her diet. R. 1643.

Regarding Vonitta's physical impairments, she visited Jamie Kennedy, M.D. on December 4, 2017, for a follow-up on her congestive heart failure and hypertension. R. 457, 459. Vonitta reported some mental health issues and hospitalizations, but stated she was doing well from a cardiac perspective, and that she has been mentally stable over the last six months. R. 457. Dr. Kennedy found that Vonitta's blood pressure was within normal limits and that she had NYHA class I heart failure. R. 459.

On December 13, 2017, Vonitta visited Jessica S. Conley, FNP for complaints of lower back pain that radiated into her sacral spine, but denied any symptoms in her lower extremities and denied numbness or weakness. R. 652–653. Vonitta reported that her pain made it difficult to participate in daily living activities. R 653. Dr. Conley ordered a lumbar MRI and noted tenderness in her spine, but found no other deficits. Id. On January 24, 2018, Vonitta reported improvement in her back pain due to her medication, but that her symptoms were exacerbated by overexertion. R. 649.

On April 19, 2018, Vonitta visited Murray Joiner, M.D. for complaints of lower back and left shoulder pain and she reported injections and physical therapy eased her pain. R. 520. Dr. Joiner found that Vonitta had a decreased range of motion and pain with cervical flexion, as well as decreased grip strength bilaterally, a full, but painful range of motion in her lumbar spine, and straight leg raise testing was positive. R. 520–521. X-rays of Vonitta's cervical spine and shoulders showed no evidence of significant osseous abnormality. R. 697–700. At a follow-up at Carilion Neurosurgery on May 8, 2018, Vonitta reported that pain had improved greatly with the last injection. R. 622. However, when seen by Dr. Joiner on May 14, 2018, Vonitta complained

of increased pain after a fall in her home, and her MRI showed broad based disc protrusions. R. 525, 529.

On June 18, 2018, Vonitta went to pain management for complaints of chronic pain in her back, neck, and shoulders, as well as fatigue with hobbies. R. 612. Dr. Lakhan found that Vonitta exhibited mildly decreased range of motion on her left shoulder, as well as mild tenderness in her paraspinal muscles. R. 613. When seen on July 10, 2018, Vonitta complained of a significant increase in her lower back pain and Dr. Conley prescribed a course of steroids and referred her to physical therapy. R. 610. She continued to follow up with pain management and began physical therapy. Id.

On September 5, 2018, Vonitta complained of a significant increase in her lower back pain with radicular symptoms in her left leg and reported falls due to weakness in her leg. R. 844. On December 10, 2018, Vonitta had a microdiscectomy by Gregory Howes, D.O. R. 888. Dr. Howes noted tenderness in the lumbar spine, but found that she was neurologically intact, thus she was released to begin physical therapy on January 23, 2019. R. 1264.

Jonathan Saks, M.D. noted that Vonitta's hypertension was well controlled on February 18, 2019. R. 1335–1337. However, Vonitta returned on February 27, 2019, and complained of foot pain in which she was referred to an orthopedist and received a Toradol injection for immediate relief. R. 1326. On her March 6, 2019 neurosurgery visit, Vonitta reported low back pain but that her lower extremity pain improved, and she walked with a cane due to her reported imbalance. R. 1253. Hope Poetker, PA found that Vonitta was neurologically intact with full strength on examination. R. 1253, 1254. At a follow-up visit on March 22, 2019 for her congestive heart failure, she reported to Dr. Kennedy that her back pain was improving, but she used a cane for longer walks. R. 1526. Dr. Kennedy noted that Vonitta's echocardiogram was

normal, and her examination was unrevealing, but she gave her a NYHA class II diagnosis based on her reports of worsening exercise tolerance. R. 1529.

On May 21, 2019, she saw Jason Naldo, DPM and complained of right foot pain in which she received bunionectomy surgery on June 13, 2019. R. 1537–1539. Vonitta complained of increased back pain on June 17, 2019 after a fall when seen at Carilion Neurosurgery (R. 1245), but Dr. Naldo noted the following day that Vonitta had done well postoperatively, and her foot pain was controlled by medication. R. 1375. At subsequent visits in 2019, Dr. Naldo noted continued improvement and that Vonitta could wear regular shoes and she generally reported mild pain. R. 1296, 1348, 1355. In 2019, Vonitta continued to complain of low back pain when seen by neurosurgery and pain management, but denied any new radicular symptoms. R. 1234, 1285, 1556, 1557.

On January 9, 2020, Vonitta reported to Dr. Howes back and neck pain due to worsening lumbar pain with radiation down the right lower extremity and cervical pain with radiation down the left upper extremity. R. 33. In January and February 2020, Ms. Abbott found that Vonitta's gait was antalgic with use of a cane, and strength was diminished in both deltoid muscles. R. 22, 38. On her February 7, 2020 visit with Ms. Abbott, Vonitta reported ongoing lower back pain with radiation through the right buttocks and down the posterior right leg to the calf, and she reported that the nerve ablation procedure had been of no benefit. R. 22.

On her January 15, 2020 visit for anemia secondary to her gastric bypass surgery, Vonitta told Joshua Morales, M.D. that she had not noticed an improvement in her energy level since she started oral iron therapy in November 2019. Dr. Morales noted that Vonitta had ongoing fatigue, back pain, and right leg weakness. R. 92. On January 22, 2020 Dr. Morals found that her MRI of

the lumbar spine showed a severe iron deficiency and a MRI of the cervical spine showed mild-to-moderate cervical spondylosis that was most prominent from C4 through C6. R. 27–31.

2. Medical Opinion Evidence

On October 9, 2018, state medical consultant Wyatt S. Beazley, III, M.D. found that Vonitta could frequently lift and/or carry ten pounds, occasionally lift and/or carry twenty pounds, could sit, stand and walk (with normal breaks) for about six hours in an eight-hour workday. R. 161. Dr. Beazley further found no manipulative, visual, communicative, or environmental limitations and she had an unlimited capacity for balancing, was capable of frequent kneeling, crouching, and crawling, and was limited to occasional stooping and climbing of ramps, stairs, ladders, ropes, and scaffolds. R. 161–162. Similarly on December 13, 2018, state medical physician Jack Hutcheson, M.D. reviewed the record and agreed with Dr. Beazley's limitations, except that she was capable of only occasional balancing. R. 178–179. Dr. Hutcheson further found that Vonitta was capable of light work. R. 179. The ALJ found the state medical consultants' opinions partially persuasive in terms of some of the non-exertional limitations, but limited Vonitta to sedentary work instead of the recommended light work due to her reports of pain and fatigue. R. 112.

On October 9, 2018, state psychological consultant Howard S. Leizer, Ph.D. conducted a consultative examination and found that Vonitta had the severe impairments of anxiety, obsessive-compulsive disorder, personality and impulse control disorder, and depressive, bipolar and related disorders. R. 159. Dr. Leizer also found that Vonitta's mental impairments cause mild limitations in her ability to adapt or manage herself and understand, remember, or apply information, and moderate limitations in her ability to interact with others and concentrate, persist, or maintain pace. Id. Similarly on December 13, 2018, state psychological consultant

Sreeja Kadakkal, M.D. on reconsideration reaffirmed Dr. Leizer's findings. R. 175–176, 180, 181. The ALJ found both state psychological consultant opinions persuasive as they were consistent with the record. R. 112.

### B. RFC Finding and Obesity

Vonitta argues that the ALJ's RFC findings are not supported by substantial evidence. Pl.'s Br. at 27–29, Dkt. 18. Specifically, she asserts that the ALJ failed to make specific findings regarding whether her impairments would cause her to experience episodes of pain, necessitating breaks and how often those breaks would occur. Id. at 28. Further, Vonitta argues that the ALJ failed to properly consider whether Vonitta's obesity could exacerbate the impact of her severe impairments, as well as her RFC. Pl.'s Br. at 22–27, Dkt. 18. However, the evidence Vonitta cites was not ignored by the ALJ, and her argument amounts to a disagreement with the ALJ's physical RFC determination that she can perform sedentary work exertional level work with occasional postural activities but cannot climb ladders, ropes, or scaffolds. R. 107.

A function-by-function analysis requires the ALJ to develop an adequate RFC which accounts for the work activities the claimant can perform given the physical or mental impairments affecting her ability to work. Importantly, the ALJ must explain the conclusions reached and explain any record evidence which contradicts the RFC determination. See Social Security Ruling (SSR) 96-8p, 1996 WL 374184; see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016). The ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material

inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8p, 1996 WL 374184, at *7.

In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d at 636 (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weightlifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D.W. Va. Apr. 29, 2015).

Here, the ALJ's RFC findings are supported by substantial evidence. The ALJ's decision includes the narrative discussion required by SSR 96-8p and contains sufficient information to allow meaningful review. R. 107–112. Unlike the ALJ in Mascio, the ALJ in this case considered conflicting medical evidence and the court is "not left to guess about how the ALJ arrived at his conclusions." The ALJ's findings include a comprehensive analysis of Vonitta's medical records regarding her severe impairments of lumbar spondylosis, congestive heart failure, obesity, peripheral artery disease, anemia, cervical degenerative changes, and bilateral bunions, the medical opinions, Vonitta's hearing testimony, and the ALJ's conclusions. Id.

Vonitta asserts that the ALJ ignored significant evidence and never made specific findings regarding whether her impairments would result in time off task outside normal work breaks or absences. However, the ALJ did not ignore any of this evidence, and to the contrary

11

provided an extensive medical history regarding her severe impairments. R. 103–112. Specifically, the ALJ explained how the objective evidence showed successful treatment with medication, physical therapy, pain management, and surgery. R. 104–112. Despite Vonitta's treatment and complaints, none of her treating providers placed any permanent restrictions on her ability to work or function. R. 111–112. The ALJ described Vonitta's testimony regarding her alleged limitations in sitting, standing, and walking and breaks to lie down (R. 108–109, 131–36), described her medical treatment, and considered medical opinion evidence (R. 109–111).

Regarding her obesity, the ALJ properly reviewed and assessed the impact of Vonitta's obesity and how obesity was factored into her RFC determination. Vonitta does not dispute the physical RFC finding and states that "the limitations found by the ALJ are consistent with [Vonitta's] other symptoms of severe, diffuse pain" but argues that obesity was not included in his RFC determination. Pl.'s Br. at 25, Dkt. 18. The ALJ reviewed Vonitta's record and found obesity to be a severe physical impairment at step two and discussed obesity pursuant to SSR 19-2p at step three of the sequential evaluation process. R. 103, 104. The ALJ discussed the state medical consultants opinions in his RFC analysis and found that no treating or examining provider found that Vonitta had any work-related physical limitations due to obesity or any other impairment. R. 111–112. Vonitta failed to identify any evidence the ALJ ignored of persistent limitations from obesity, that were unaccounted for in the RFC finding. See SSR 19-2p, 2019 WL 237424, at *2, 4 ("Obesity in combination with another impairment(s) *may or may not* increase the severity or functional limitations of the other impairment(s)."; "We will not make general assumptions about the . . . functional effects of obesity combined with another impairment(s)") (emphasis added).

The role of this court is not to reweigh the evidence, as Vonitta urges, or substitute its judgment for the ALJ, but instead determine whether the ALJ's decision is supported by substantial evidence. See Sullivan, 907 F.2d at 1456. I recommend finding that substantial evidence supports the ALJ's RFC determination.

### C. Mental Impairments 96-8p

Vonitta argues that the ALJ failed to properly assess her mental impairments as required by SSR 96-8P. See Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996). Specifically, Vonitta asserts that the ALJ failed to properly consider her moderate limitations in concentration, persistence, or pace and in interacting with others by only addressing the skill level of work and not Vonitta's ability to sustain work activity over the course of an eight-hour workday. Vonitta also claims the ALJ failed to explain how he arrived at his conclusion that she could work for two-hour increments and would be off task up to ten percent of the workday. R. 107; Pl.'s Br. at 29–35, Dkt. 18.

SSR 96-8P requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. Teague v. Astrue, No. 1:10-cv-2767, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P at *7; Meadows v. Astrue, No. 5:11-cv-63, 2012 U.S. Dist. LEXIS 115150, at *24, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. 9-cv-2545, 2010 U.S. Dist. LEXIS 132972, at *15-16, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010)); Monroe v. Colvin, 826 F.3d 176, 189, (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate

when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often).

In Shinaberry v. Saul, the Fourth Circuit clarifies that an "ALJ cannot summarily 'account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work,' because 'the ability to perform simple tasks differs from the ability to stay on task.'" Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020) (quoting Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015)). The decision in Mascio does "not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." Id. In contrast, Shinaberry highlights "sister circuits" who conclude that "limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations [in concentration, persistence, or pace]" when the "medical evidence demonstrates that a claimant can engage in simple, routine tasks, or unskilled work, despite [these] limitations." Id. (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). Shinaberry further confirms that Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC, but instead underscores the ALJ's duty to adequately review the evidence and explain the decision. See also Monroe, 826 F.3d 176 (emphasizing that the ALJ must provide a sound basis for his ruling, including discussing what evidence he found credible and specifically applying the law to the record).

This is not a situation like Mascio, where the ALJ summarily concluded that a limitation to simple, unskilled work accounts for the claimant's moderate impairment in concentration, persistence, and pace without further analysis. Unlike the claimant in Mascio, the medical evidence here supports the ALJ's conclusion that, despite her moderate limitations in

concentration, persistence, or pace and interacting with others, Vonitta is capable of performing the basic mental demands of simple work with the specified accommodations. Further, here, the ALJ explained why Vonitta's moderate limitations in concentration, persistence, or pace and interacting with others, did not translate into a limitation in the RFC beyond a work with simple instructions, simple tasks, occasional interaction with coworkers and supervisors, and no interaction with the public. R. 107.

As a preliminary matter, the ALJ adequately supported his finding that Vonitta could sustain work activity over the course of an eight-hour workday and accounted for Vonitta's moderate impairments in his hypothetical questions to the vocational expert ("VE") and in the RFC. The ALJ asked the VE to consider "an individual of the claimant's age, education, and work experience who[] . . . is able to understand, remember, and carry out simple instructions and perform simple task[s], with occasional interaction with coworkers and supervisors, but no interaction with the public. Additionally, the individual requires regular breaks every two hours."[7] R. 145. Substantial evidence supports the ALJ's development of Vonitta's RFC as already discussed. The ALJ is not required to pose hypothetical questions to the VE relating to impairments not supported by the record. See Fisher v. Barnhart, 181 Fed. App'x 359, 364 (4th Cir. 2006) (citing Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005)) ("[A] hypothetical question is unimpeachable if it 'adequately reflect[s]' a residual functional capacity for which the ALJ had sufficient evidence."); Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) (stating vocational expert's opinion must be in response to hypothetical questions that "fairly set out all of claimant's impairments").

---

[7] Vonitta argues that the ALJ erred in addressing her mental limitations when he changed the exertional level to sedentary in his hypothetical questions. However, as acknowledged by Vonitta, the ALJ asked the VE to consider a sedentary exertional level, instead of light, but "the other limitations remain the same." R. 145–146. Thus, the ALJ properly considered Vonitta's moderate limitations as explained in the above mental impairments section.

The ALJ explained how the RFC accommodates Vonitta's moderate impairments in concentration, persistence, or pace, writing that her moderate limitation in concentration "limits her to simple instructions and tasks along with some off task behavior" and "in terms of persistence and pace, [Vonitta] requires regular breaks and is expected to be off task up to 10% of the workday which are accepted by employers." R. 106. The ALJ acknowledged Vonitta's testimony that she had difficulty interacting with people, concentrating, focusing, and finishing things. R. 141. He also considered Vonitta's medical history, including treatment notes where "providers did not observe that [Vonitta] was overly distractible or slow" and no treating or examining mental health providers placed any work-related mental functional limitations. R. 106, 112. The ALJ also noted that the "medical evidence of record shows that Vonitta generally did not complain of serious difficulty maintaining concentration, persistence, or pace." Id. The ALJ further noted that while she presented with some deficits in mood and affect, during the relevant period Vonitta often reported stability and adequate symptom control from psychiatric medications. Id. The ALJ also specifically described Vonitta's activities of daily living, noting that she reported daily tasks and watching television for pleasure, which the ALJ found required at least some concentration and persistence. Id. Finally, the ALJ relied on the opinions of the state agency psychologists, who both found a moderate impairment in concentration, persistence, or pace. R. 159, 176.

Regarding her moderate limitation in interacting with others, the ALJ noted that Vonitta reported having some issues with family but denied any problems with authority figures or a history of firings, and indicated she interacted normally with providers. R. 105. The ALJ also noted Vonitta's hearing testimony reporting issues with crowds and unfamiliar people, as well as irritability. Id. The ALJ relied on medical records indicating Vonitta was pleasant, cooperative,

16

and in no distress, though she often presented with a mildly depressed mood and affect, and had no deficiencies in eye contact, speech or conversations after the amended alleged onset date. Id. The ALJ also noted that Vonitta went out in public to go shopping and reported no serious problems, and did not complain of serious problems with interpersonal interaction. Id. Thus the ALJ concluded that she should have occasional interaction with others and no interaction with the public. Id.

I find that the ALJ adequately reviewed Vonitta's mental impairments and explained the RFC restriction that Vonitta requires breaks every two hours, could have occasional interaction with coworkers and supervisors, and no interaction with the public. R. 102, 105–107, 109. Further, the ALJ concluded the that she will be off task ten percent in his Step Three analysis, where he discussed the same evidence mentioned above. See Richardson v. Berryhill, No. 5:15-CV-173-RJC-DSC, 2019 WL 1354042, at *3 (W.D.N.C. March 26, 2019) (because ALJ "provided ample discussion of how [a plaintiff's] mental impairments impact[ed] her ability to perform work-related tasks," RFC that limited a plaintiff to a nonproduction pace passed muster "because the ALJ contextualized and explained how he reached his conclusion[.]").

The ALJ's reasoning is supported by the opinions of the state agency psychologists and the ALJ's consideration of the record. This court is not "left to guess about how the ALJ arrived at his conclusions." Mascio, 780 F.3d at 637. As such, I conclude that substantial evidence supports the ALJ's conclusions regarding Vonitta's RFC.

### D. Subjective Allegations

Vonitta asserts that the ALJ failed to explain how the evidence the ALJ cited establishes that Vonitta's allegations are not fully supported. Pl.'s Br. at 35–38, Dkt. 18. Vonitta alleged that her physical complaints such as muscle spasms, multi-joint inflammation, reduced strength in her

hands, and difficulty moving preclude her from work. R. 112. Vonitta does not identify specific instances in this case where the ALJ improperly applied the legal standards. Rather, Vonitta asks this court to re-evaluate her subjective allegations and come to a different conclusion from that of the ALJ. That is not the standard of a social security appeal.

When evaluating a claimant's symptoms, an ALJ must use the two-step framework set forth in 20 C.F.R. § 404.1529 and SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). First, the ALJ must determine whether objective medical evidence presents a "medically determinable impairment" that could reasonably be expected to produce the claimant's alleged symptoms. 20 C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 1119029, at *3. Second, after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled. See 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *4. "At this step, objective evidence is *not* required to find the claimant disabled." Arakas, 983 F.3d 83 (4th Cir. 2020) (citing SSR 16-3p, 2016 WL 1119029, at *4–5). SSR 16-3p recognizes that "[s]ymptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques." Id. at *4. Thus, the ALJ must consider the entire record and may "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate" them. Id. at *5.

Here, the ALJ reviewed Vonitta's medical history and her subjective allegations in detail and found that Vonitta's statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical and other evidence in the record. R. 111. The ALJ noted that there were no medical opinions supporting Vonitta's claim of disability and stated that "[t]he absence of probative medical opinions supporting a claimant's allegations

18

is one factor considered in determining [the] overall [RFC]." Id. Thus, the ALJ also noted that during the relevant period, Vonitta worked part-time for a ride sharing service or as a caretaker in 2019, and cared for an elementary school age son. R. 111–112, 129. Further, contrary to Vonitta's argument, the ALJ accommodated her pain and fatigue by restricting her to sedentary work instead of light work. R. 112.[8]

The ALJ was entitled to find that the objective medical evidence outweighed Vonitta's subjective statements, and he provided a sufficient rationale for doing so. A reviewing court gives great weight to the ALJ's assessment of a claimant's subjective allegations and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984). The ALJ's opinion was thorough and applied the proper legal standard, and I will not re-weigh the evidence. Accordingly, I conclude that substantial evidence supports the ALJ's analysis of Vonitta's subjective complaints with substantial evidence and that Vonitta can perform work at the level stated in the ALJ's opinion.

## CONCLUSION

I **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** Vonitta's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The clerk is directed to transmit the record in this case to Michael F. Urbanski, Chief

---

[8] Vonitta argues that it "begs the question" if the ALJ properly considered her allegations when the ALJ found that evidence did not support her cane usage and stated that she was limited to "light work with postural and environmental limitations" when he limited Vonitta to sedentary work in the RFC. Pl.'s Br. at 37, Dkt. 18. I conclude that the ALJ clearly explained Vonitta's sedentary RFC limitation by noting "based on the claimant's reports of pain and fatigue, the undersigned finds she should be limited to sedentary work with some additionally postural and environmental limitations." R. 112. Thus, for the reasons stated in the Report and Recommendation, the ALJ's RFC finding that Vonitta is limited to sedentary work with certain accommodations was supported by substantial evidence.

United States District Judge, and to provide copies of this Report and Recommendation to counsel of record.  Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection, including the waiver of the right to appeal.

Entered:  March 7, 2022

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge